**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

**AMBER RETTIG, as parent and next of Friend of K.P., a minor child,**

**Plaintiffs,**

**v.**

**COWETA PUBLIC SCHOOLS, et al.,**

**Defendants.**

**Case No. 26-CV-79-GLJ**

## OPINION AND ORDER

This matter comes before the Court on Defendants Max Myers and David Wineinger's Motion to Dismiss. Docket No. 44. Defendants move to dismiss Plaintiff Amber Rettig's ("Rettig") claims against them for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). *Id.* Defendants also contend they are entitled to qualified immunity. *Id.* For the reasons set forth below, Defendants' Motion to Dismiss [Docket No. 44] is GRANTED.

## BACKGROUND AND PROCEDURAL HISTORY

This action arises out of Rettig's claims that Defendants Coweta Public Schools, Max Myers and David Wineinger "turned a blind eye to the rape culture at [Coweta Public Schools]" [Docket No. 49 at 4] resulting in an assault upon Rettig's daughter, K.P., on April 30, 2025. *See* Docket No. 41. Specifically, in April of 2025, K.P. was a Coweta Public Schools student attending Donald P. Sloat Junior High. Docket No. 41 at ¶¶ 1, 5, 14, 20. On April 30, 2025, K.P. was eating lunch in the school cafeteria with G.P. *Id.* at ¶ 20. Rettig alleges, "G.P. began physically grabbing K.P. in an aggressive manner, which quickly became sexualized in nature." *Id.* at ¶ 21. Rettig alleges G.P. began inappropriately touching K.P. over her clothing while K.P. tried to distance herself. *Id.* at ¶ 22. Zeke Childress witnessed the interaction, instructed the students to "leave

enough room for Jesus," and walked away. *Id.* at ¶¶ 22, 24. G.P. then digitally penetrated K.P., K.P. told G.P. to "STOP," and Zeke Childress instructed G.P. to "get off her[.]" *Id.* at ¶¶ 27-28. K.P. then left the cafeteria, informed Rettig of the incident, and Rettig reported the incident to the school. *Id.* at ¶¶ 29-31.

The Amended Complaint alleges Max Myers ("Myers") was, at all times relevant to Rettig's claims, the superintendent of Coweta Public Schools. Docket No. 41 at ¶ 5. Rettig alleges David Wineinger ("Wineinger") was the Principal of Donald P. Sloat Junior High. *Id.* at ¶ 6. Further, prior to April of 2025, Wineinger created a "boys will be boys" culture of sexual misogyny, whereby "male sexual aggression towards females was treated with deliberate indifference and conscience acquiescence." *Id.* at ¶ 17.

On the day of the incident involving K.P. and G.P., Rettig requested to speak with Wineinger "but was informed that [he] was unavailable, as he was speaking to G.P. and his parents." *Id.* at ¶ 37. On May 2, 2025, Rettig met with Wineinger about the April 30, 2025 incident and Wineinger responded, "[G.P.] deserves an education as much as [K.P.]" *Id.* at ¶ 41. During the May 2, 2025 meeting, Wineinger told Rettig "boys will be boys," suggested Rettig remove K.P. from school for the rest of the year, and his belief that the "whole thing would 'blow over' through Summer Break." *Id.* at ¶ 42. Subsequently, K.P. did not return to school for the remainder of the school year. *See id.* at ¶¶ 6, 42, 44. G.P. was not removed from school because of the incident. *See id.* at ¶ 44.

Based on the incident, Rettig initiated this action on March 20, 2026, against Defendants Coweta Public Schools, Charity Parsons, Myers and Wineinger. *See* Docket No. 2. Defendants Parsons, Myers and Wineinger responded to the initial complaint by filings motions to dismiss. *See* Docket Nos. 25, 27. Defendant Coweta Public Schools filed an answer. *See* Docket No. 26.

In response to the motions to dismiss, the Court invited Rettig to file an amended complaint. Docket No. 40.

On August 25, 2026, Rettig filed her Amended Complaint. *See* Docket No. 41. Rettig asserts: i) a Title IX claim against Coweta Public Schools; ii) a Fourteenth Amendment equal protection claim against Coweta Public Schools, Wineinger and Myers; iii) a Fourteenth Amendment due process claim against Coweta Public Schools, Wineinger and Myers; iv) a negligence claim against Coweta Public Schools, Wineinger and Myers; and v) a negligent hiring, training, supervision and retention claim against Coweta Public Schools. *See* Docket No. 41.[1] Once again, Defendants Myers and Wineinger moved to dismiss the Amended Complaint. Docket No. 44. Myers and Wineinger argue Rettig failed to state a claim against them upon which relief may be granted and they are entitled to qualified immunity. *See id.* Rettig filed a Response in opposition. Docket No. 49. Myers and Wineinger filed a Reply in support of their Motion to Dismiss. Docket No. 52. The Motion to Dismiss [Docket No. 44] is now ripe for adjudication.

## ANALYSIS

### I. Legal Standards

Under Fed. R. Civ. P. 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Practically, this means that the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on its face when the complaint "pleads factual content that allows the court to draw the reasonable inference that the defendant is

[1] Defendant Coweta Public Schools answered the Amended Complaint. *See* Docket No. 45. Rettig also asserted claims against Charity Parsons. *See* Docket No. 41. However, those claims have since been dismissed by stipulation. *See* Docket No. 50.

liable for the misconduct alleged." *Id.* "In considering whether the complaint's allegations are sufficient, the court first eliminates conclusory allegations, mere 'labels and conclusions,' and any 'formulaic recitation of the elements of a cause of action.'" *Bledsoe v. Carreno*, 53 F.4th 589, 606 (10th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 678) (quoting *Twombly*, 550 U.S. at 555). "The court then accepts as true all well-pled factual allegations and considers 'whether they plausibly give rise to an entitlement to relief.'" *Id.* (quoting *VDARE Found. v. City of Colorado Springs*, 11 F.4th 1151, 1159 (10th Cir. 2021)).

In evaluating a Rule 12(b)(6) motion to dismiss, the Court typically may not look beyond the pleadings. *Casanova v. Ulibarri*, 595 F.3d 1120, 1125 (10th Cir. 2010); *see also Rubio ex rel. Z.R. v. Turner Unified Sch. Dist. No. 202*, 475 F.Supp.2d 1092, 1097 n.3 (D. Kan. 2007) (the Court generally may not look beyond "the four corners of the complaint when deciding a Rule 12(b)(6) motion to dismiss"). When reviewing a motion for dismissal under Rule 12(b)(6), the Court "'must determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed.'" Com*monwealth Prop. Advocates, LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1201-1202 (10th Cir. 2011) (quoting *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007)). "While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in h[is] complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012).

**II. Equal Protection Claim**

Concerning her equal protection claim, Rettig alleges Myers and Wineinger: failed to promptly and appropriately respond to the alleged sexual harassment of K.P. [*id.* at ¶ 98]; failed to take immediate and appropriate actions to investigate and/or remedy sexual harassment occurring

at Coweta Public Schools [*id.* at ¶ 103(a)]; failed to take prompt and effective steps to end the sexual violence, prevent its recurrence, and address its effects [*id.* at ¶ 103(b)]; failed to provide an adequate grievance procedure for students [*id.* at ¶ 103(c)]; tolerated G.P.'s sexual harassment and abuse and enabled G.P. to continue to sexually discriminate, harass and abuse female students [*id.* at ¶ 104]; and Myers, alone, "consciously acquiesced to the globally sexually misogynistic conduct of male-on-female aggression and violence, and exhibited deliberate indifference to K.P." [*id.* at ¶ 107].

Additionally, Rettig alleges Wineinger "exhibited conscious acquiescence to G.P.'s conduct by visibly witnessing the sexual aggression and violence of G.P. upon K.P. and taking pretextual and perfunctory corrective measures, such that G.P. knew there would be no serious consequences for his actions against K.P., such that those actions continued and escalated to full-blown rape by digital penetration." *Id.* at ¶ 108.

### A. Applicable Law

A governmental official or supervisory employee may be held liable under section 1983 for violation of a plaintiff's equal protection rights "upon a showing of deliberate indifference to known sexual harassment." *Murrell v. School Dist. No. 1, Denver*, 186 F.3d 1238, 1250 (10th Cir. 1999). "'[L]iability under § 1983 must be predicated upon a 'deliberate' deprivation of constitutional rights by the defendant' and not upon mere negligence." *Id.* (quoting *Woodward v. City of Worland*, 977 F.2d 1392, 1401 (10th Cir. 1992). Rettig "must state facts sufficient to allege [Myers and Wineinger] actually knew of and acquiesced in" G.P.'s behavior. *Id.* (citing *Jojola v. Chavez*, 55 F.3d 488, 490 (10th Cir. 1995). Critically, to state a viable § 1983 claim, "it is incumbent upon a plaintiff to identify *specific* actions taken by *particular* defendants[.]" *Pahls v. Thomas*, 718 F. 3d 1210, 1226 (10th Cir. 2013) (emphasis in original).

**B. Defendant Myers**

Rettig does not allege Myers was personally involved in the assault of K.P. on April 30, 2025, nor does Rettig allege Defendant Myers was aware of the assault after the fact or participated in any manner in the subsequent investigation or meetings with Rettig. *See* Docket No. 41. Rettig merely alleges in a conclusory fashion that Defendant Myers consciously acquiesced in K.P.'s harassment. *Id.* at ¶ 107. However, Rettig provides no specific factual allegations that demonstrate this to be true. *Murrell*, 186 F.3d at 1250; *see also Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991) ("[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based."). Rettig, therefore, fails to state an equal protection claim against Defendant Myers. *See Hart for J.M. v. N.M. School for the Deaf*, 2009 WL 10706995, at *4 (D.N.M. Sep. 30, 2009) (unpublished)[2] ("Without any alleged actual knowledge, Stern cannot be said to have consciously acquiesced in Chavez's ongoing harassment of J.M., and Plaintiff has therefore failed to state an equal protection [claim] against [Stern].").

**C. Defendant Wineinger**

Concerning Wineinger, the Amended Complaint is also devoid of any allegations that Wineinger "actually knew of and acquiesced in" G.P.'s behavior. *Murrell*, 186 F.3d at 1250. Rettig alleges "[w]hen CPS allowed G.P. to be a student at the School, it knew or should have known that G.P. had a propensity for misconduct, including sexual misconduct, based upon prior conduct." Docket No. 41 at ¶ 19. However, there is no allegation that Wineinger specifically had any knowledge of G.P.'s behavior or propensity before April 30, 2025. *See* Docket No. 41.

---

[2] The Court cites all unpublished decisions herein as persuasive authority. FED. R. APP. P. 32.1(a); 10th Cir. R. 32.1(A).

Next, the Court notes it must take the "well-pleaded allegations" as true. *Sinclair Wyo. Refining Co. v. A&B Builders, Ltd.*, 989 F.3d 747, 765 (10th Cir. 2021). However, the Court need not accept a complaint's "unwarranted inferences." *Gaddy v. Corp. of the President of Church of Jesus Christ of Latter-Day Saints*, 148 F.4th 1202, 1210 (10th Cir. 2025). The Court concludes Rettig's allegation that "Wineinger witness[ed] the sexual aggression and violence of G.P. upon K.P." is an unwarranted inference. Docket No. 41 at ¶ 108. Rettig's Amended Complaint clearly alleges that the only school employee to witness the event was Zeke Childress. *See* Docket No. 41 at ¶¶ 22-28. Therefore, without additional factual detail to support this allegation, the Court does not construe this allegation as true.

As a result, there are no allegations that Wineinger acquiesced in any such assault or harassment against K.P. by G.P. To the contrary, the Amended Complaint alleges Wineinger was informed of the incident the day it occurred [Docket No. 41 at ¶ 37], and the same day the Coweta Police Department was notified. *Id.* at ¶ 33. After May 2, 2025, Rettig removed K.P. from Donald P. Slout Junior High for the remainder of the 2024-2025 school year. *Id.* at ¶ 44. In the fall of 2025, K.P. attended the Intermediate High School [*Id.* at ¶ 45], and based upon publicly available information, Wineinger is not the principal of the Intermediate High School. *See* COWETA PUBLIC SCHOOLS INTERMEDIATE HIGH SCHOOL STAFF, http://ih.cowetaps.org/o/ih/staff (last visited November 19, 2026; indicating Coy Graves is the principal of the Intermediate High School).[3] K.P. was also offered counseling services. *Id.* at ¶ 35. There are simply no factual allegations that

---

[3] When entertaining a motion to dismiss, a court is permitted "to take judicial notice of its own files and records, as well as facts which are a matter of public record." *Van Woudenberg v. Gibson*, 211 F.3d 560, 568 (10th Cir.2000), *abrogated on other grounds by McGregor v. Gibson*, 248 F.3d 946, 955 (10th Cir.2001).

would allow the Court to conclude Wineinger acquiesced in G.P.'s conduct. Accordingly, Rettig failed to state an equal protection claim against Weininger.

**II. Due Process Claim**

Concerning her due process claim, Rettig alleges Myers and Wineinger: failed to promptly investigate, discipline, and remedy continued sexual assault and sexual harassment by G.P. thereby depriving K.P. or a safe learning environment [Docket No. 41 at ¶ 114]; failed to properly act after being put on notice of G.P.'s sexual misconduct [*id.* at ¶ 115]; failed to thoroughly investigate the sexual assaults [*id.* at ¶ 117]; knew or should have known that sexual misconduct, sexual assault, sexual harassment, and sex discrimination existed within Coweta Public Schools [*id.* at ¶ 120]; and failed and/or refused to supervise G.P. [*id.* at ¶ 122].

Furthermore, Myers alone "created the danger to the female students and staff in the School by perpetuating, cultivating and ultimately promoting the 'boys will be boys' mentality of sexual misogyny that is pervasive and systematic within the School," and Myers's "actions put K.P. and other females within the School at substantial risk of serious, immediate, and proximate harm of sexual violence and aggression by their male counterparts." *Id.* at 21, ¶¶ 129-130. Additionally, Wineinger "created the danger to K.P. specifically by witnessing the sexual aggression and violence of G.P. upon her and displaying superficial and cursory concern for her well-being, such that G.P. was emboldened to escalate his behaviors, having no fear of serious consequences." *Id.* at ¶ 131. Finally, Wineinger's "actions put K.P. at substantial risk of serious, immediate and proximate harm of sexual violence and aggression by G.P., which ultimately occurred once G.P. knew that he could sexually assault K.P. without intervention or consequences from the school." *Id.* at ¶ 132.

**A. Applicable Law**

It is well settled that a state does not have a constitutional duty to protect its citizens from violence by private actors. *See DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 195-97 (1989). Instead, state actors are generally liable under the Due Process Clause only for their own acts. *See id.* However, the "danger creation" theory is an established exception to this general rule. *Uhlrig v. Harder*, 64 F.3d 567, 572 (10th Cir. 1995). Rettig proceeds under this exception. *See* Docket No. 41 at 19-21[4]; *see also* Docket No. 49 at 13.

The danger creation theory is a "narrow exception" that "applies only when a state actor 'affirmatively acts to create, or increases a plaintiff's vulnerability to, danger from private violence.'" *Moore v. Guthrie*, 438 F.3d 1036, 1042 (10th Cir. 2006) (quoting *Currier v. Doran*, 242 F.3d 905, 923 (10th Cir. 2001)). "To invoke the danger-creation exception, a plaintiff must establish as a threshold matter (1) private violence, and (2) affirmative conduct on the part of the state in placing the plaintiff in danger." *Hernandez v. Ridley*, 734 F.3d 1254, 1259 (10th Cir. 2013); *see also Est. of B.I.C. v. Gillen*, 710 F.3d 1168, 1173 (10th Cir. 2013). If these preconditions are met, then a plaintiff must satisfy all elements of a six-part test. *See Hernandez*, 734 F.3d at 1259; *see also Christiansen v. City of Tulsa*, 332 F.3d 1270, 1281 (10th Cir. 2003).

A created danger claim cannot proceed without an "affirmative act" or "affirmative conduct" by the state official. *See, e.g., Graham v. Independent Sch. Dist. No. I-89*, 22 F.3d 991, 995 (10th Cir. 1994) (affirming dismissal of danger creation claims on a motion to dismiss because "plaintiffs cannot point to any affirmative actions by the defendants that created or increased the danger to the victims"); *Gray v. Univ. of Colo. Hosp. Auth.*, 672 F.3d 909, 920 (10th Cir. 2012) ("'affirmative conduct' is a necessary precondition to such application" (quoting *Graham*, 22 F.3d

---

[4] The Court's citations refer to the CM/ECF header pagination.

at 995)). "The affirmative conduct requirement typically involves conduct imposing 'an immediate threat of harm, which by its nature has a limited range and duration,' and is 'directed at a discrete plaintiff rather than the public at large.'" *Hernandez*, 734 F.3d at 1259 (quoting *Ruiz v. McDonnell*, 299 F.3d 1173, 1183 (10th Cir. 2002)). "Inaction, an omission to act, or even nonfeasance cannot be the basis of a danger creation claim." *Silagyi v. Ind. Sch. Dist. No. 12, Okla. Cty., Okla.*, 680 F. Supp. 3d 1236, 1245 (W.D. Okla. 2023) (relying on *Gillen*, 710 F.3d at 1173 ("Our precedents consistently conclude that mere negligence or inaction is not enough.")); *Graham*, 22 F.3d at 995 ("alleged nonfeasance in the face of specific information which would mandate action does not invoke the protections of the Due Process Clause.").

**1. Defendants Myers and Wineinger**

Rettig's allegations fail to state a claim for multiple reasons. First, the majority of the allegations against Myers and Weininger, in support of the due process claim, are asserted against Myers *and* Wineinger. *See* Docket No. 41 at ¶¶ 114, 115, 117, 120, 122. The Tenth Circuit has instructed, "it is particularly important in such circumstances that the complaint make clear exactly *who* is alleged to have done *what* to *whom,* to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations[.]" *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (emphasis in original); *Bills v. City of Okla. City, Okla.*, 2010 WL 3604450, at *4 (W.D. Okla. Sep. 10, 2010) (unpublished) ("[A]llegations against a group of defendants collectively are insufficient to withstand dismissal of a § 1983 claim[.]"). These collective allegations fail to state a claim.

Second, even setting aside the collective allegations, Rettig's allegations focus primarily on Myers and Wineinger's alleged failures to act. *See* Docket No. 41 at ¶¶ 114, 115, 117, 122. An

omission to act cannot be the basis of a danger creation claim. *Gillen*, 710 F.3d at 1173 ("[I]naction is not enough.").

Finally, the Court agrees with the Defendants that the Amended Complaint fails to allege any affirmative conduct on the part of Myers or Weininger that placed K.P. in danger. *See* Docket No. 44 at 7-8. Tellingly, in her Response to this argument, Rettig fails to identify any affirmative conduct by Myers or Wineinger individually and continues to refer collectively to "School Employees." *See* Docket No. 49 at 13-15. As to Myers, all the Amended Complaint offers is that Myers perpetuated, cultivated and promoted the "boys will be boys" mentality of sexual misogyny within the School. Docket No. 41 at ¶ 129. However, Rettig offers no factual allegations establishing an affirmative act taken by Myers to allegedly perpetuate, cultivate and promote the "boys will be boys" mentality. *See Hall*, 935 F.2d at 1110.

As to Wineinger, even accepting Rettig's allegation that Wineinger witnessed the assault,[5] these allegations still fail to allege an affirmative act. Taken as true, the allegation is that Wineinger witnessed the inappropriate conduct and failed to act to prevent it. *Gillen*, 710 F.3d at 1173 ("[I]naction is not enough."). For these reasons, Rettig failed to state a due process claim against Myers and Wineinger.[6]

## III. Remaining Claims

Defendants further argue Rettig failed to allege sufficient facts to establish a supervisory liability claim, Rettig's negligence claim against Myers and Wineinger is barred by Oklahoma's

---

[5] The Court already concluded this is an unwarranted inference. *See supra.*

[6] Since the Court concludes Rettig failed to state a valid equal protection or due process claim against Myers and Wineinger, the Court will not address Defendants' qualified immunity defense. Docket No. 44 at 11-12; *see also Moore v. City of Wynnewood*, 57 F.3d 924, 931 (10th Cir. 1995).

Governmental Tort Claims Act, and punitive damages are unavailable as to Myers and Wineinger. *See* Docket No. 44 at 8-15. Rettig did not directly respond to any of these arguments. *See* Docket No. 49. Defendants argue this failure amounts to a waiver of the claims. Docket No. 52 at 7, 10. The Court concurs. *See C1.G ex rel. C.G. v. Siegfried*, 38 F.4th 1270, 1282 (10th Cir. 2022) (affirming dismissal for abandonment where plaintiff failed to address claim in response to motion to dismiss); *see also In re Dallas Roadster, Ltd.*, 846 F.3d 112, 126 (5th Cir. 2017) (concluding that the plaintiff's failure to respond to the defendant's argument in a motion to dismiss that a claim was subject to dismissal constituted abandonment of that claim). Accordingly, Rettig's supervisory liability claim, negligence claim,[7] and request for punitive damages from Myers and Wineinger are all deemed abandoned.

## CONCLUSION

Accordingly, Defendants Myers and Wineinger's Motion to Dismiss [Docket No. 44] is **GRANTED**.

**IT IS THEREFORE ORDERED** that Defendants Myers and Wineinger's Motion to Dismiss [Docket No. 44] is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall **terminate** the following party Defendants: Max Myers and David Wineinger.

**DATED** this 20th day of November, 2026.

GERALD L. JACKSON
United States Magistrate Judge

---

[7] This conclusion is further bolstered by Rettig's initial admission that her negligence claim in the initial Complaint should be dismissed against the Defendants. Docket No. 35 at 6, n.1; *see also* Docket No. 41-1 at 23-24 (Rettig did not materially amend her negligence claim against the Defendants).